Talent by James Angel and Jennifer Koyak of Apple Leaf by George Mueller. Mr. Angel. Justice Wright, Justice Littman, Justice McCabe, Mr. Mueller, may I please the court. We are here on an appeal involving a post-judgment matter involving the interpretation of a marriage and marital ceremony and some issues which have come up. This is a bit of background. This involves a 2008 divorce with a social marriage case which was finalized on June 7, 2011 between J. Koyak, the accountant for my client, and Jennifer Koyak, the Apple Leaf. And under the agreement, basically this is a rather unique marital ceremony agreement where traditionally one party would pay child support to the other party. But here they've done something different which is called a direct pay. Which is instead of paying child support, the payor is going to pay certain expenses of the other party, the payee, and they're going to pay them directly. And there's a lot of good reasons for doing direct pays. One, it encourages the party to pay more than the minimum as to what happened in this case. The marital ceremony agreement recited that he was paying more than 28%, which was the guideline out under the law at that time. Also, the direct pay encourages compliance because the payor knows that it's going to support the children. They're more willing to comply with it. And also, they share the risk of any increase in prices. But also, you have to retract support. And this was an agreement where J. Koyak was paying expenses basically two-fold. The party said two children, Allison born in 1999 and Benjamin born in 2003. So Allison turned 18 in 2017. And up until that time, J. was to pay not only the mortgage on the residence he bought for Jennifer, but also utilities and real estate taxes. And those all stayed until Benjamin was 21. Before Allison essentially aged out, he was also paying homeowners insurance, auto insurance, cell phones, basically things which are beneficial to the children. And the reason we're here is because even though the agreement says this is basically child support in lieu of directly paying child support, the trial court classified the agreement as a property sum. The difference, of course, being that child support is always modifiable either way, whereas if it's a property sum, then the parties are stuck with it. And the court based its decision primarily on a case called Henry Marriage of Pyhaley, which is cited in the briefs. That's 215, all the way up to 815. I believe that was 2nd District, 1994. And that was a case where even though the agreement said this is child support, the court there said, no, we don't believe this is child support because what happened in that case was the husband was paying a certain amount in child support and then the marital settlement agreement said in addition to that child support, he's going to pay additional child support in terms of paying a mortgage. But he remained partial. He remained a joint owner of that house. So the Pyhaley court said this was crucial to their holding. They said, in effect, the amount paid is basically compulsory savings program. Given that the petitioner will recoup these payments, we do not find this is child support. We find that this is a property sum. And that was crucial to the Pyhaley holding, which is much different than this case. Here, there's no, of course, the big difference between this case and Pyhaley is there's no, of course, savings plan. Jay Koyak is paying the mortgage. He's paying the mortgage. He's paying utilities. He's paying miscellaneous expenses. Regardless of what happens, he will never see it done back to whatever he paid. So that's one major difference between Pyhaley. Pyhaley was involved in a situation where there's payment of child support and then payment of something additional, which is deemed child support. Here, this is all part of one set provision where he's paying these amounts out. Pyhaley was also, I think, different because at the time this agreement was entered, the parties had children roughly equal times. What happened in this case, which brought all the issues to the head, is that the eldest child, Allison, began spending, I think, by the parties, her testimony was pretty much consistent, 95% of her time at Jay's residence and only 5% of her mother's, whereas Ben, there's conflicting testimony, but I think he was spending at least half his time at Jay's residence. So that's what happened was in 2014, during the summer, Jay filed a petition to modify visitation based on what was actually happening in practice and also to reduce his child support because he was taking a much bigger burden of Allison's support due to her being at his house. And that's also, I think, where this is different than Pyhaley, is that there's nothing indicating that he's advocating any criminal responsibilities or trying to push that off on Jennifer. Also, one other key difference between this agreement and the one in Pyhaley was Pyhaley had no reduction. There was also a case involving two children, but there was no reduction. It was just you're paying the mortgage payment until the child turned 18 and then they were selling it, you're getting your money back. Here, there was basically a reduction as Allison turned 18 and his obligation was reduced. So that's another indication that this was a child support rather than... What happens to the lump sum when Benjamin reaches his majority? Are you talking about the house? Yes. Okay. Yes, I am. You know, she's supposed to reduce balance to $49,000. What's supposed to happen to that? Okay. Assuming she's getting $850 and her mortgage requirement on his part is still that, it's three, four years in the future here. From today, yes. What's his responsibility for that? What is Jay's responsibility for that? I mean, the agreement was... At the time this agreement was made, Jennifer was contemplating bankruptcy. And for that reason, that's also why this was classified as child support. But per the memorial settlement agreement, she receives the house at the time that Benjamin turns 18. Jay basically entered the agreement. Jay can't sell the house without her consent prior to 2022. And then in 2022, she gets the house. But with a certain balance. With a certain balance. Whatever balance there is up to that $49,000. Yes. Am I remembering correctly? Yeah. Yes, I think you are because one of the arguments that they've made is that basically you're giving her a property with just a certain balance left over. And therefore they're arguing that's a property. So I think really what it was is this was just a calculation of what it would be. Assuming he is paying what he should. And the situation doesn't change. I think that's why that's put in there. So we could figure out if he's somewhere close as far as what he would be paying. In terms of what's going to be left. So I don't think just the fact that there's a certain balance necessarily turns this into a property settlement. This is still required to do that. If you're correct, the child support goes down. $350,000 or whatever. This is still responsible for paying the mortgage down to $48,000? No, he would not because our contention is that mortgage payment is child support. And that actually gets back, I think, to a key provision of the marital settlement agreement. It's on page 7 of the marital settlement agreement, article 5. It's in the record. I think it's pages C91 to C93. And there the key sentence is, in the event that Jay becomes unable to make payments on the mortgage that encumbers the residence, General Carroll shall rightfully finance the mortgage and make the necessary payments. And I think that language is critical to showing this is child support, because besides, as the court knows, in interpreting the marital settlement agreement, which is a question of law, the intent of the object is to ascertain the objective intent of the parties. That's the first part. And the primary source of that is the language. And Crowley, as far as I'm concerned, the agreement is unclear on its face. But also the court, also when interpreting the marital settlement agreement, which is essentially a contract, the whole point is not to write a contract for the parties that they themselves did not write. The courts, we would respectfully suggest, should not be doing that. And if they're calling this the property settlement, then I have no idea how this provision would ever come into effect. Or basically, if Jay's financial circumstances changed to where he couldn't make the mortgage payment, Jennifer is supposed to take it over. So for that reason, I think the $48,000 was probably more of a guideline than an actual target. So for that reason, I don't think the actual balance should necessarily change the calculus. And I think there's other reasons to believe this does not change the calculus. In going through this, I noted a number of things. One, when we're looking at child support, the things you should be looking at is, one, is there finality? And two, does either party bear the risk of a change in circumstances? I mean, for example, if Jay's income had increased or the children's needs had increased, he bore the risk of paying more than what was provided in these respective paragraphs that I quoted. So for that, there's the lack of finality. Even though he had a $500 a month, I think it was in utilities, if the children's needs increased or his income increased, he was very much open to the possibility that he'd actually be having to pay more. So I think that's one indication this is child support rather than a property settlement. Also, the expenses he is paying are mortgages, utilities for the children, auto insurance so the kids can get to the school and activities. These are expenses which are typically subsumed within the definition of child support. If Jay had been ordered to pay regular child support directly to Jennifer, then she'd ask the court to have him pay these expenses. I think most child courts would say, no, this is subsumed within your definition of support. Also, there's a growing trend, I've noticed, in Illinois law. For example, under the College Expense Statute, Section 513A, where the court can order one or both parties to pay expenses directly to the educational institution. Also, with child care expenses, I believe under 3.7, that those expenses can be paid directly to the daycare provider. So that, I think, shows a trend in terms of having people pay expenses directly rather than having repeated squabbles about how child support money is spent, things like that. Also, I believe with the trial court's ruling, it creates a very uneven situation between similarly situated individuals. As an example, you can have a hypothetical individual who pays $1,000 per month in child support to their former spouse, and that former spouse pays, say, $500 in mortgage, $250 in utilities, $250 for insurances, things like that. There you have a situation where that would change. If circumstances substantially change, they can get a modification. Hypothetical too, you may have a situation where a spouse paid, let's say they paid in stuff for a house, they paid for an apartment. So that's good, it's going there, there's no residual benefit. But they paid for that rather than paying the child support directly. They paid for apartment, utilities, renters' insurance. That would, I think, also under their scenario, give an issue as far as being able to modify. But in the third circumstance, where you're paying it directly under their scenario, they're saying you could not modify that. Also, the second issue, which I will briefly address, is when determining the court's, determining Jay Koyak's income, the court just unilaterally imputed the income that his spouse, Mary Jo Koyak, new wife, made for him, made working for him as her own separate appraisal. And the court cited Lipnower. And as I pointed out in my briefs, there weren't any indications of fraud that you would typically see in Lipnower, such as a person being overqualified for the position, not having a prior experience, prior salary history similar to that, a person giving up a job, and a dramatic decrease in the payer's income, or was, of course, this a case where the compensation was different, paid to other employees. So for those reasons, the trial court themselves admitted that this case was significantly different than Lipnower, or at least I think used the words not as egregious. So for those reasons, I think just the fact you have a spouse working for you is not enough reason to impute income to that spouse, to the parties. So for that reason, we believe the trial court erred in that and also in not making support retroactive for the reasons stated in my brief. She wasn't just working for him. She set up her own business. That's correct. So that it was the income was not going to her. It was going to her business. So it was not calculable within his. That's correct. And she didn't set that up until the last year? I believe that's correct, but that was also a situation where she went, became full-time in the appraisal business. Prior to that, she had worked for United Airlines. And that was also one material difference from Lipnower, is this is a situation where she had worked for United Airlines and gave up working for them, was essentially bought out, and began working for Mr. Coy. I'm not aware of anything that prohibited her from working for somebody else. It's just he was giving her so much business that she didn't have the time to work for anybody else. So for that reason, I don't think it was anything which was indicative of fraud or trying to manipulate income. So it wasn't his agency that saw support of her company? That is correct. All right. Thank you so much, Mr. Angelo. Mr. Mueller. Thank you, Ron. Please report, counsel. I'll try to be brief in my comments. I think the appropriate place to start here is to look at the context that Judge Kettle was faced with when he had to rule on this matter. In 2011, when these parties got divorced, Jennifer was broke and pro se. Jay had a thriving business. And out of that disparity emerged a marital settlement agreement, which on its face appears to be vastly disproportionate in favor of Jay in terms of money and property. More importantly, Jay didn't have to make any direct payments to Jennifer. One wonders whether that's part of the whole control scenario that might have been at play. But regardless, he was taking care of his kids, but he didn't give her a check. And, of course, that arrangement didn't work out for very long. And in 2014, Jay filed a petition to modify. Actually, two petitions to modify. The first of those is that he made very critical allegations about his former wife's parenting and sought a change of custody. I guess that gets her a little off balance. And then he also seeks a reduction in his financial obligation, including the obligation to make the mortgage payments. And I certainly can see that the agreement says it's all in the nature of child support. But on the eve of trial, he withdraws his allegation regarding parenting and would proceed to financial issues. It's noteworthy that despite multiple orders, Jay never did file a financial affidavit in this case. And certain allegations and arguments he makes now aren't very well supported by the record in large part because he failed to complete the record by filing the required financial affidavit. Judge Heldt let parties go to trial in any event. And the legal analysis is pretty straightforward. I don't think the Merrill-Sullivan agreement is ambiguous at all. And Judge Heldt's ruling is sort of confusing in that, on the one hand, he finds it's ambiguous, but on the other hand, he says the real ambiguity, or the real problem here, is that in the substance of the agreement, one can see that it's a hybrid agreement, which is partially for child support and partially in the nature of property settlement. And counsel in his argument spent a good deal of time now trying to distinguish Pahaly. But what he can't get away from is that the principle that Pahaly is that if there is a residual benefit to a parent rather than to a child, one can infer that that represents property settlement. And granted, in Pahaly, the residual benefit was to the payor. And in this case, the residual benefit was to the payee. But in both cases, there's a significant residual benefit not to a child but to a parent. And Judge Heldt said that constitutes property settlement. And then he looked at the other obligations that Mr. Koyak had, and he did an appropriate support analysis based upon Darifer's income, Jay's income, and came to a conclusion. And I don't think counsel takes issue with that other than the imputing of Mary Jo Koyak's business income to Jay, or at least a portion of it. And I'll get to that in a moment. The other point that is significant here is that if Jay's argument is correct, that it's all property settlement, then he had a marital settlement agreement that any person would find on a contract. Because at that point, that meant Jennifer had none. She had a five-year-old car and the clothes on her back. At least if you view the agreement as a hybrid agreement, she gets a significant pile of equity in a piece of real estate when the youngest child turns 18. Now, there is ample basis in the record to find that the agreement is ambiguous, even though I don't believe it is. I think on its face, one can see that it is a hybrid agreement. And keep in mind, there's plenty of case law that says the labels we use, whether we call it child support or property settlement, isn't necessarily controlling. But to find that it's ambiguous, even in his argument, counsel now says that the remaining mortgage balance that was required in the marital settlement agreement, and I believe that number was about $45,000 or $50,000. It was $48,000. Your Honor, I apologize for not knowing the record well. And that is, in fact, the correct number. But that remaining balance, counsel in his argument now said that might have been in the nature of a guideline. He engages in a great deal of interpretation, and let's look at A, let's look at B, and then we can conclude C, in his brief as well, to try to come to the finding that the agreement wasn't ambiguous. And in fact, that very process would suggest that it was ambiguous. So that leads us, then, to the issue of Mary Jo's income. And Judge Heller said that it wasn't as egregious as the Lindenauer case, which he also decided at the trial level. Well, maybe not as egregious, but still egregious. It's a classic situation. While Jay has a petition pending to reduce his financial obligations to his former wife, he remarries, and suddenly the new wife's income takes a vast jump, all of which comes from the husband's business, so that his reported income is now significantly lower. And that would be a basis to conclude that he would have a lower financial obligation. I think because the standard of review on this issue is abuse of discretion, it's hard with those facts, and with the fact that Jay never filed a financial affidavit to conclude that Judge Heller's ruling here is an abuse of discretion. I grant it's not as egregious as Lindenauer, but, Your Honors, it is egregious. And Judge Heller found, and I think this is telling, Jay continued to live well, driving a new Audi, continued to own multiple pieces of real estate. Jennifer's working as a night nurse, working 12-hour shifts, with big repair bills on the house that Jay now wanted to stop making the mortgage payments on. The equities in this case all favor Jennifer. The record favors Jennifer, and the judge's decision in this matter was not an abuse of discretion. Therefore, we ask that it be affirmed. Do you think there was a change of circumstances? Pardon me? Do you think there was a change of circumstances? Well, the only change of circumstances was that the oldest child, which had been living half-time with both parents, had started residing primarily with the father. She's aged out now, and the trial court made a finding that the youngest child was still living approximately half-time with both parents and being supported by both parents. It was not clear to me. Was the house bought for the sole purpose of the settlement agreement? Yes. In fact, Jennifer testified in the trial that she would have, if it had been up to her, purchased a much more modest home. But this was the home that Jay wanted the children to live in. And does that have impact on the financial aspects here? I think it does to the extent that Jennifer clearly knew that she couldn't afford those payments. That's why she didn't want that kind of a house. And so one has to infer that Jay says to her, I want the kids to live in a nice house, and let's get this house, which is twice as much as you can afford, but I'll make home mortgage payments. And when the youngest child ages out, you can have it and the residual equity, which is your deferred property settlement. That inference is so clearly obvious from the facts that we do know. And by the way, there's argument here in the briefs that the judge had it aired by loud and plural evidence. The plural evidence from both sides didn't really advance the issue. How would you define hybrid as it applies to this fact? I define hybrid as appropriate. And this is the way Judge Pettit did it. It's not my definition. A portion of it, i.e., the mortgage payment, was property settlement. The remainder of it, the utility obligations, the insurance, the real estate tax, and the car insurance, he found to be in the nature of child support. He eliminated Jay's obligations for all of those payments and then did a conventional child support analysis based on their comparative incomes and ordered a support amount that, frankly, wasn't much different than the sum of the items he had been paying. As long as we're asking you definitions, what would be your definition of in lieu of? Rather than? Or as a substitute? Maybe as a substitute for? So this agreement was a substitute for child support. That would be the way that it would appear from a written agreement. And certainly, of course, none of them were.  Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. I believe the use of the word hybrid was used in this situation because even the child court recognized that there has to be some consequence of Jay taking on a greater share of the current responsibilities and costs for Allison as opposed to Jennifer. And that's why I think the child court called this a hybrid and reduced the real estate taxes and the property insurance. That was on page 7 of the child court's ruling. So the fact that they're having to do some reduction, I think, is indicating that this really is a child support agreement rather than a property sum. Also, Mr. Mueller puts an emphasis on we're not bound by labels, but the problem with not being bound by labels is a party can hedge the risk. If Jay's income had increased, Jennifer, I'm sure, would be calling this a child support agreement so she could modify it upward, whereas if the situation changed to where his income goes down or he takes a greater share of the current pyramid of responsibilities, then it's a property sum. So that's why I think it's important to stick with the labels of the court that are used in the Meryl Sullivan agreement. Not only are they the best indication of what the party's intended, but it doesn't allow one party to play both sides of it. She was not represented by the courts in the original divorce. I'm sorry? In the original divorce, was she represented? I don't know if she was represented at the time. She might have had a prayer council before then, but I just can't remember. The proceedings went three years, and she may have had an attorney at some point. I'm just not able to remember that far back. My apologies on that. How would she have paid retroactive child support to him? How would she have paid it? What would she have paid it from? Well, the petition was filed on—he's only asking for retroactive to the date he filed the petition. And one of the reasons we're stating that Judge Helms' ruling was in error was because he just did an unwritten balancing of the equities and said, based on the party's financial circumstances, I'm not going to make her pay it backwards. The problem, I think, with that is that once she's on notice from the summer of 2014, he's trying to terminate his child support obligation, and I think by not requiring somebody to pay it retroactively, it just incurs litigation to go on and on. As happened in this case, the petition was filed in July 2014. We didn't have a ruling, I believe, until it was March 15th of 2017. So the thing more than the fact that she may have difficulty paying for it, one, I think that part of the problem for that is because she dragged this on so long. But also the question is, I don't think it's really necessarily balancing the equities. It's because both parties have a duty to support the child. So Justice McDade, you may be right that she may have trouble paying this back, but I don't think that excuses her from having to pay from the date the petition was filed because she was put on notice. I mean, this is not any unfair surprise. Counsel, that's one minute. Also, Mr. Muir mentioned the difference in residual benefits of the parent. There's two problems with that. One, ideally expressly conditioned upon recoupment by the paying parent, but also that would create a very arbitrary distinction. Mr. Coy, if he had paid for an apartment, then under their argument, this would be child support, but instead he said, I want my children to live in a nice house, have some permanency, and I don't believe that magically turns this into a property settlement. Also, with respect to the lack of financial affidavit, Mr. Coy did provide his tax return, and in Judge Petal's ruling, he never said, I don't know where the settlements were shown, and I'm resolving all doubts in favor. In all doubts against Mr. Coy, Judge Petal never did that. He essentially said he employed his spouse. It has an uneasy feeling about that, and for that reason I'm recouping that. There needs to be much more of a showing of fraud as was found in Buchenauer, which wasn't present in this case. The testimony was uncontradicted. She had worked there before, so it's not like he just brought her in, and she knew about her employment, so she needed to supplement her income by working more hours, more projects for Mr. Coy. So that by itself I don't believe meets the showing of a fraud. Counsel's time. Thank you. Thank you, Mr. Angel. Thank you both for your argument today. The versions of this matter are under advisement. Dispatch with a written disposition within a short day. We're now taking a short recess. We're adjourned.